# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 19, 2017      Decided November 21, 2017

No. 16-5234

KNAPP MEDICAL CENTER, ET AL.,
APPELLANTS

v.

ERIC D. HARGAN, IN HIS OFFICIAL CAPACITY AS ACTING
SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN
SERVICES, AND DOCTORS HOSPITAL AT RENAISSANCE,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-01663)

———

*Marc James Ayers* argued the cause for appellants. With
him on the briefs was *Gregory Glen Marshall*.

*Caroline D. Lopez*, Attorney, U.S. Department of Justice,
argued the cause for appellee Eric D. Hargan. With her on the
brief was *Alisa B. Klein*, Attorney.

*Ryan Scarborough* argued the cause for appellee Doctors
Hospital at Renaissance. With him on the brief were *John K.
Villa*, *Enu Mainigi*, and *Richard A. Olderman*.

Before: HENDERSON and GRIFFITH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

KAREN LECRAFT HENDERSON, *Circuit Judge*: To prevent Medicare abuse through self-dealing, the Stark Law prohibits a physician from referring patients to a hospital or other healthcare facility in which he has a financial interest. There is an exception, however, for a physician-owned hospital, as long as the hospital complies with various reporting requirements. The Affordable Care Act amended the Stark Law to limit the ability of a physician-owned hospital to expand but carved out expansion exceptions for hospitals in medically underserved areas. As amended, the Stark Law prohibits judicial review of the procedure used to grant or deny an application for an expansion exception. The sole issue in this appeal is whether the district court correctly interpreted the preclusion-of-review provision to deprive it of subject matter jurisdiction. For the reasons that follow, we affirm.

## I.

Title XVIII of the Social Security Act of 1935, 42 U.S.C. §§ 1395–1395*lll*, establishes Medicare, a medical insurance program for the elderly and disabled. Section 1877 of the Act—commonly referred to by the surname of its sponsor, former U.S. Congressman Peter Stark—forbids "self-referrals" by which a physician could profit from Medicare reimbursements to healthcare providers with which he has a financial relationship. 42 U.S.C. § 1395nn(a)(1)–(2). The "hospital ownership" exception accommodates physician-owned hospitals by allowing a physician to refer patients to a hospital in which he has an ownership interest, provided the hospital complies with reporting and disclosure requirements. 42 U.S.C. § 1395nn(d)(3)(D), (i)(1)(C)–(E), (i)(2).

Title VI of the Patient Protection and Affordable Care Act of 2010 (ACA) amends the Stark Law to prohibit physician-owned hospitals to expand beyond "the number of operating rooms, procedure rooms and beds for which the hospital is licensed … on March 23, 2010." Pub. L. No. 111-148 § 6001(a), 124 Stat. 119, 684–689, codified as amended at 42 U.S.C. § 1395nn(d)(2)–(3), (i). The expansion restriction exempts some hospitals in medically underserved communities—"applicable hospitals" and "high Medicaid facilities"—subject to approval by the Secretary of the U.S. Department of Health and Human Services (HHS). *See* 42 U.S.C. § 1395nn(i)(3). As amended by the ACA, section 1395nn(i)(3) reads, in relevant part:

> (A) *Process*. (i) … The Secretary shall establish and implement *a process* under which a hospital … may apply for an exception from the [nonexpansion] requirement …. [(ii)] *The process under clause (i)* shall provide … the community … the opportunity to provide input with respect to the application. (iii) … The Secretary shall implement *the process under clause (i)* on February 1, 2012. (iv) … Not later than January 1, 2012, the Secretary shall promulgate regulations to carry out *the process under clause (i)*.
>
> (B) Frequency—*The process described in subparagraph (A)* shall permit an applicable hospital to apply for an exception up to once every 2 years.
>
> (C) … [A]n applicable hospital granted an exception under *the process described in subparagraph (A)* may [expand].

(D) … Any [expansion] may only occur … on the main campus of the applicable hospital.

(E) … "[A]pplicable hospital" means a hospital—(i) that is located in a county in which [population growth has exceeded the state average by at least 150 per cent for the past five years] … ; (ii) [that has an] annual percent of total inpatient [Medicaid] admissions … [that exceeds the county average]; (iii) that does not discriminate against beneficiaries of [Medicare or Medicaid nor] permit physicians practicing at the hospital to [do so]; (iv) that is located in a State in which the average bed capacity … is less than the national average … ; and (v) that has an average bed occupancy rate that is greater than the [state] average ….

[(F)–(H) define terms not relevant here and require publication of expansion decisions.]

(I) Limitation on review—*There shall be no administrative or judicial review* under section 1395ff of this title, section 1395oo of this title, or otherwise *of the process under this paragraph (including the establishment of such process).*

42 U.S.C. § 1395nn(i)(3) (emphasis added).

Doctors Hospital at Renaissance (DHR), a physician-owned hospital in Hidalgo County, Texas, applied to expand as an applicable hospital. *See* 80 Fed. Reg. 26,566, 26,567 (May 8, 2015) (notice of application). Knapp Medical Center, McAllen Hospitals, L.P. and Cornerstone Regional Hospital, L.P. (collectively, Knapp), competitors of DHR, filed

comments opposing DHR's expansion application. They argued that HHS—specifically the Center for Medicare and Medicaid Services (CMS)—had failed to publish and accept public comments on an earlier version of the expansion application; that the approved application had been filed less than two years after the first, unpublished application, in contravention of HHS rules; and that DHR did not qualify as an applicable hospital because it failed the statutory requirements for county population growth, Medicaid admissions and Medicaid nondiscrimination. Finding the objections meritless, CMS approved the application. *See* 80 Fed. Reg. 55,851, 55,852 (Sept. 17, 2015) (decision granting application).

Less than one month later, Knapp sued to set aside the decision and block DHR's expansion. The district court dismissed Knapp's complaint for lack of subject matter jurisdiction, holding that its claims are unreviewable per 42 U.S.C. § 1395nn(i)(3)(I), which, as set forth *supra*, bars administrative and judicial review of the expansion-restriction exception "process." *Knapp Med. Ctr. v. Price*, 192 F. Supp. 3d 129, 134–35 (D.D.C. 2016). Knapp appeals.

## II.

We review *de novo* the district court's dismissal for lack of subject matter jurisdiction, taking the plaintiffs' allegations as true and drawing all reasonable inferences in their favor. *Fla. Health Scis. Ctr., Inc. v. Sec'y of Health & Human Servs.*, 830 F.3d 515, 518 (D.C. Cir. 2016). In interpreting a provision that precludes judicial review, we "must determine whether the challenged agency action is of the sort shielded from review" and "may not inquire whether a challenged agency decision is arbitrary, capricious, or procedurally defective" unless we are certain of our subject matter jurisdiction. *Amgen, Inc. v. Smith*,

357 F.3d 103, 113 (D.C. Cir. 2004). The plaintiffs bear the burden of establishing jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Although we presume the Congress intends that agency action be judicially reviewable, *El Paso Nat. Gas Co. v. United States*, 632 F.3d 1272, 1276 (D.C. Cir. 2011), that presumption, "like all presumptions used in interpreting statutes, may be overcome by specific language … that is a reliable indicator of congressional intent," *Tex. All. for Home Care Servs. v. Sebelius*, 681 F.3d 402, 408 (D.C. Cir. 2012) (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984)).

"Only Congress may determine a lower federal court's subject-matter jurisdiction," *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004) (citing U.S. CONST. Art. III, § 1), and what the Congress gives, the Congress may take away. "[T]he strong presumption that Congress intends judicial review of administrative action," *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986), is therefore rebuttable by a clear statement of congressional intent to preclude review, *Block*, 467 U.S. at 349. Our task is to determine whether the Secretary's approval of an expansion application under the Stark Law is within the preclusive scope of section 1395nn(i)(3)(I). *See Amgen*, 357 F.3d at 113.

As noted earlier, the ACA amended the Stark Law to incorporate the expansion prohibition, the applicable-hospital exception and the preclusion-of-review provision.[1] Pub. L.

---

[1] The ACA inserted ten other similarly worded preclusion-of-review provisions in scattered sections of the Medicare Act. *See* 42 U.S.C. §§ 1395ww(o)(11)(b) (hospital value-based purchasing program); 1395w-4(n)(9)(G) (physician feedback program); 1395w-4(p)(10) (value-based payment modifier); 1395ww(p)(7) (adjustments to payments for hospital-acquired conditions);

No. 111-148, § 6001(a), 124 Stat. 119, 688. And as further noted earlier, the preclusion provision forbids "administrative or judicial review under section 1869 [42 U.S.C. § 1395ff], section 1878 [42 U.S.C. § 1395oo], or otherwise of the process under this paragraph (including the establishment of such process)." Knapp offers four reasons why its claims are not subject to the jurisdictional bar.

First, in Knapp's view, "process," as used in section 1395nn(i)(3)(I), refers only to the HHS regulation implementing the expansion prohibition and its exceptions, and "the establishment of the process" is the notice-and-comment rulemaking by which the regulation was developed and promulgated. According to Knapp's interpretation, the "process" is distinct from the CMS determination flowing from the process; therefore, according to Knapp, although an APA attack on the rulemaking and a challenge to specific requirements of the regulation are unreviewable, its challenge to an individual exception decision is reviewable. Knapp attaches great significance to the caption of subparagraph (A), "Process," which it equates with "Congress *expressly* defin[ing]" "the process." Subparagraph (A) instructs the HHS Secretary to "establish and implement a *process* under which a hospital … may apply for an exception," and provides that "[t]he *process* … shall provide [the community] the opportunity to provide input with respect to the application." § 1395nn(i)(3)(A)(i)–(ii) (emphasis added). It also requires "implement[ation] of the *process* under clause (i) on February

---

1315a(d)(2) (Center for Medicare and Medicaid Innovation); 1395jjj(g) (shared savings program); 1395ww(q)(7) (hospital readmissions reduction program); 1395ww(r)(3) (disproportionate-share hospital payments); 1395kkk(e)(5) (independent Medicare advisory board); and 1395*l*(x)(4) (incentive payment program for primary care services).

1, 2012" and the "promulgat[ion of] regulations to carry out the *process* under clause (i)" "not later than January 1, 2012." § 1395nn(i)(3)(A)(iii)–(iv) (emphasis added). If subparagraph (A) encompasses "the process," as its caption suggests, then Knapp's narrow reading of the preclusion-of-review provision is at least plausible.

Second, Knapp points to the legislative history of the statute entitled "America's Affordable Health Choices Act of 2009," a precursor to the ACA that contained an arguably broader provision precluding review of "the exception process under this paragraph, including the establishment of such process, and any determination made under such process." H.R. 3200, 111th Cong. § 1156(a)(5) (as reported Oct. 14, 2009). The provision that the Congress enacted in the ACA omitted the reference to "any determination made under such process," which Knapp takes to mean "Congress specifically considered and rejected the [Secretary's] interpretation."

Third, Knapp reads this Court's precedent as reinforcing its view that determinations are reviewable even though "the process" is not. Looking to our decisions in *Florida Health Sciences Center, Inc. v. Secretary of Health & Human Services*, 830 F.3d 515 (D.C. Cir 2016), and *Texas Alliance for Home Care Services v. Sebelius*, 681 F.3d 402 (D.C. Cir. 2012), Knapp argues that we have narrowly construed the ACA's jurisdictional bars, finding jurisdiction lacking only where the "inputs" of an administrative decision are "inextricably intertwined" with the decision itself. Because it challenges the Secretary's determination, and not its "inputs," and because the determination is not "inextricably intertwined" with the unreviewable "process," Knapp urges that there is jurisdiction here despite our "correct decisions" in *Texas Alliance* and *Florida Health*.

Finally, Knapp warns of "absurd results" if we affirm the jurisdictional dismissal of its complaint. In the future, Knapp fears, a hospital could submit a one-page letter to the Secretary stating its desire to expand and the Secretary could—without fear of judicial review—summarily grant expansion without applying the statutory criteria. Such blatant lawlessness would be unreviewable, Knapp argues, if we decline to entertain the substantive claims Knapp advanced to the Secretary here.

We reject each of Knapp's contentions. First, as a textual matter, there is more than one "process" in section 1395nn(i)(3). There is "the process described in subparagraph (A)," which is the limited "procedure" that Knapp concedes is unreviewable. But, critically, there is "the process *under this paragraph*"—that is, paragraph (3) of section 1395nn(i)—which sets forth the entire expansion-restriction exception. The Congress used cross references to clarify what process it referred to in each part of section 1395nn. In section 1395nn(i)(3)(B) and (C), "the process" means "the process described in subparagraph (A)," but in section 1395nn(i)(3)(I), it means "the process under this paragraph [(3)]," that is, under paragraph 3*(A) through (I)*. By precluding review of "the process" in its broadest sense, the Congress barred jurisdiction over much more than "the process described in subparagraph (A)." It may be true that "the process described in subparagraph (A)" is "a defined set of procedural rules to be followed in applying for an expansion exception" but that process is far different from—and more limited than—the process that is off limits to judicial review per subparagraph (I).

To accept Knapp's argument that "the process" is "the process described in subparagraph (A)," then, we would have to ignore the plain contrary language of the statute. Far from confirming Knapp's reading, the statute's two cross references

to "the process described in subparagraph (A)"[2] highlight that subparagraph (I) refers to a different, broader process. The structure of section 1395nn(i)(3) and the unambiguous reference in subparagraph (I) to "the process under this paragraph" cannot be squared with Knapp's position that the unreviewable "process" refers only to subparagraph (A).

Second, Knapp's legislative history argument adds little, if anything, to our analysis. We can infer nothing from the Congress's consideration and rejection of a differently worded provision in a separate piece of legislation. Even if the legislative history of the ACA were probative, the legislative history of a different healthcare bill that never became law is not.

Third, Knapp parses our decisions in *Florida Health* and *Texas Alliance* too finely. In *Texas Alliance* the plaintiffs challenged the competitive bidding process established under 42 U.S.C. § 1395w-3 for durable medical equipment, prosthetics, orthotics and supplies. *Texas Alliance*, 681 F.3d at 404, 408. The statute instructed the HHS Secretary to determine whether a contractor "meets applicable financial standards specified by the Secretary" as a prerequisite to admitting it to the bidding process. § 1395w-3(b)(2)(A)(ii). Under section 1395w-3, the Secretary conducted an initial round of competitive bidding before promulgating rules "specif[ying]" the "applicable financial standards" and rejected some bidders in that round for "financial ineligibility." *Texas Alliance,* 681 F.3d at 407–08. The plaintiffs challenged the Secretary's failure to promulgate the financial standards under which they were rejected but they had to surmount the statute's

---

[2] The cross-references to "the process described in subparagraph (A)" appear in subparagraphs (B) (forbidding more than one expansion application every two years) and (C) (describing the "permitted increase" in size for a hospital granted an exception).

preclusion of review of, *inter alia*, "the awarding of contracts under this section" and "the bidding structure and number of contractors selected." § 1395w-3(b)(11)(B).

The plaintiffs in *Texas Alliance* argued that the statute precluded review only of "individual contracts" awarded through the competitive bidding process but allowed review of the process itself. *Texas Alliance*, 681 F.3d at 410. We held that "[t]he statutory language … is not so narrow;" instead, it applies to "'the awarding of contracts' generally." *Id.* Accordingly, we declined the plaintiffs' invitation to "distinguish between an upfront attack … by suppliers not yet injured by [the rule] and a challenge brought after-the-fact by a frustrated bidder." *Id.* The financial standards were "integral to" and "inextricably intertwined with the bidding structure," review of which structure was "expressly precluded" by the statute. *Id.* at 411.

*Florida Health* required us to interpret the ACA preclusion-of-review provision in the Medicare Act's compensation scheme for "disproportionate share hospitals"—that is, those that treat a disproportionate share of Medicare and Medicaid patients. *Florida Health*, 830 F.3d at 517. The plaintiff hospital asserted that its disproportionate-share payment was too low and challenged the population data the Secretary used to calculate the payment. *Id.* at 518. The plaintiff tried to distinguish between the specific items the ACA made unreviewable—"estimate[s] of the Secretary" or "period[s] selected by the Secretary" as inputs of the payment formula, 42 U.S.C. § 1395ww(r)(3)—and its challenge to the Secretary's choice of population data. *Florida Health*, 830 F.3d at 518. We declared that this "categorical distinction between inputs and outputs" elevated form over substance and would have permitted review of "the data that underlie the Secretary's estimate" even though the data were "inextricably intertwined"

with the unreviewable estimate itself. *Id.* at 519. We therefore found the plaintiff's challenge unreviewable.

Knapp describes this case as "the opposite" of *Florida Health* and *Texas Alliance*. All we have held up to now, Knapp argues, is that a statute that precludes review of "outputs" necessarily precludes review of "inputs," too. Yet in *Florida Health* and *Texas Alliance* we used a functional analysis to determine whether we could entertain the plaintiffs' claims without frustrating the Congress's desire to place certain administrative actions beyond review. We have twice rejected the "categorical distinction between inputs and outputs," *Florida Health*, 830 F.3d at 519, that Knapp now urges us to accept. And although the preclusion-of-review provisions in *Florida Health* and *Texas Alliance* identified specific unreviewable actions, Knapp's attempt to construe this distinction in its favor fails because the omission of a list like section 1395ww's or section 1395w-3's broadens rather than narrows the preclusive effect of section 1395nn(i)(3)(I). Unlike those sections, in which the Congress specified what items were unreviewable, section 1395nn(i)(3)(I)'s preclusion of review is unqualified.

Finally, Knapp's fear of "absurd results" is unfounded. The Secretary acknowledges that "judicial review may be available when the actions charged are claimed to be *ultra vires*"—which is to say, actions "beyond [HHS's] statutory authority." Knapp has not argued that the approval of DHR's expansion application was *ultra vires* so we need not decide whether the district court would have jurisdiction of such a challenge. Moreover, in *Florida Health* and *Texas Alliance* we held that the Congress precluded all review of certain claims elsewhere in the ACA. It is not apparent why total preclusion is "correct" in those cases but "absurd" in this one.

The Congress has undoubted power to restrict the jurisdiction of the lower federal courts and, when it does so, we need only determine the scope of the restriction. We conclude that "the process under this paragraph" encompasses all of section 1395nn(i)(3), including the granting or denial of expansion applications. Because 42 U.S.C. § 1395nn(i)(3)(I) precludes judicial review of Knapp's claims, the district court lacked subject matter jurisdiction of the complaint. The district court's judgment of dismissal is therefore affirmed.

*So ordered.*