# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 24, 2017         Decided June 8, 2018

No. 16-5267

MERCY HOSPITAL, INC.,
APPELLANT

v.

ALEX M. AZAR II, SECRETARY, UNITED STATES DEPARTMENT
OF HEALTH AND HUMAN SERVICES,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-01236)

*Stephanie A. Webster* argued the cause for appellant. With her on the briefs was *Christopher L. Keough*. *James H. Richards* entered an appearance.

*Abby C. Wright*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief was *Michael S. Raab*, Attorney.

Before: TATEL, GRIFFITH and MILLETT, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: The Centers for Medicare and Medicaid Services (CMS), a division of the Department of Health and Human Services (HHS), administers Medicare reimbursements to eligible hospitals that provide inpatient rehabilitation services. The Administrator of CMS declined to hear Mercy Hospital's challenge to its reimbursement rate for fiscal years 2002 through 2004 because he interpreted a statutory provision that precluded administrative and judicial review of the reimbursement rate to also preclude review of the underlying formula that helped determine that rate. Mercy Hospital appealed his decision to the district court, which agreed with the Administrator and dismissed the challenge for lack of subject-matter jurisdiction. We agree with the district court.

I

A

In 42 U.S.C. § 1395ww(j), Congress directs CMS to set rates for Medicare reimbursements for inpatient rehabilitation services in two steps. The first step takes place before the beginning of the fiscal year, when CMS generates a standardized reimbursement rate for each discharged patient, called a payment unit, based on the average estimated costs of operating inpatient facilities and treating patients for the upcoming year. The second step takes place after the fiscal year ends, when CMS adjusts the standardized rates to reflect the particular circumstances of each hospital for that year. Typically, CMS hires independent contractors (the "Medicare Contractors") to calculate each hospital's final payment from the standardized rates established at step one and subsequent adjustments made at step two.

Paragraph (3) of subsection (j) sets forth five adjustments (the "statutory adjustments") that CMS applies in step two to calculate each hospital's particular reimbursement.[1] Each of the first four of these adjustments is described elsewhere in subsection (j).[2] The last adjustment we call a "residual" clause, which allows CMS to create any additional adjustments "necessary to properly reflect variations in necessary costs of treatment among rehabilitation facilities." § 1395ww(j)(3)(A)(v). Alone among the statutory adjustments, the meaning of the residual clause is not set forth in the text of the statute but in rules of CMS's own making. *Id*.

CMS invoked the residual clause in 2001 to create a low-income percentage (LIP) adjustment, which increases hospital payments based on the number of low-income patients served during the preceding fiscal year. 42 C.F.R. § 412.624(e)(2); Prospective Payment System, 66 Fed. Reg. 41,315, 41,360 (Aug. 7, 2001). In 2004, CMS changed how to determine which patients should be included in a particular variable that is used in the LIP formula. Changes to the Hospital Inpatient Prospective Payment Systems, 68 Fed. Reg. 48,916, 49,099 (Aug. 11, 2004). As a result, some hospitals would receive a

---

[1] The adjustments are: (i) the "increase factor" adjustment, which reflects price increases in the relevant market; (ii) the "outlier" adjustment, which qualifies a hospital for additional payments for patients with uncommonly high expenses; (iii) the "area wage" adjustment, which reflects the cost of labor in the hospital's area; (iv) the "case mix" adjustment, which accounts for the types of patients the hospital treated; and (v) the "residual" clause authorizing CMS to create additional adjustments. *See* § 1395ww(j)(3)(A)(i)-(v).

[2] For example, § 1395ww(j)(4)(A)(i) defines the outlier adjustment as a payment "based upon the patient being classified as an outlier based on an usual length of stay, costs, or other factors." Clause (j)(3)(A)(ii) then directs CMS to make that adjustment when determining the step-two rate.

lower LIP payment than before. In *Northeast Hospital Corp. v. Sebelius*, 657 F.3d 1 (D.C. Cir. 2011), we reviewed a different Medicare rate and held that CMS could use the 2004 version of that variable only for fiscal years 2005 and forward. *Id*. at 18.

B

Appellant Mercy Hospital operates an inpatient rehabilitation facility that is eligible for Medicare reimbursements. For fiscal years 2002 through 2004, the Medicare Contractor used the amended LIP formula to adjust Mercy Hospital's step-one reimbursement rate. Mercy Hospital appealed this adjustment to the Provider Reimbursement Review Board (the "Board"), which is the CMS oversight panel for hospital reimbursements, 42 U.S.C. § 1395oo(a)(1)(A)(i), arguing that our decision in *Northeast Hospital* precluded use of the 2004 formula for years before 2005. *Mercy Hosp. v. First Coast Serv. Options, Inc.*, P.R.R.B. Dec. No. 2015-D7, 2015 WL 10381780 (Apr. 3, 2015).

The Medicare Contractor argued that the Board had no jurisdiction to consider the hospital's challenge because § 1395ww(j)(8)(B) bars administrative and judicial review of "prospective payment rates." *Id*. at *2. The Medicare Contractor explained that "prospective payment rates" means reimbursement rates calculated at step two, and that by precluding their review, (8)(B) necessarily bars review of how the LIP adjustments are calculated. *Id*. On April 3, 2015, the Board rejected that challenge to its jurisdiction and ordered that the Medicare Contractor recalculate Mercy Hospital's reimbursement using the original, pre-2004 LIP formula. *Id*. at *7.

On June 1, 2015, the Administrator of CMS in his role as the highest administrative review authority reversed the

Board's finding of jurisdiction and adopted the Medicare Contractor's interpretation of "prospective payment rates" that barred review of step-two rates and the LIP formula. *Mercy Hosp. v. First Coast Serv. Options, Inc.*, Review of P.R.R.B. Dec. No. 2015-D7, 2015 WL 3760091, at *11 (June 1, 2015). Mercy Hospital brought suit in the district court challenging the Administrator's decision. The district court agreed with the Administrator's interpretation of the statute and dismissed the suit for lack of subject-matter jurisdiction. *Mercy Hosp., Inc. v. Burwell*, 206 F. Supp. 3d 93, 102-03 (D.D.C. 2016). We affirm.

II

The district court had jurisdiction to review the Administrator's decision under 42 U.S.C. § 1395oo(f)(1), and we review the district court's decision under 28 U.S.C. § 1291. We review de novo the district court's dismissal for lack of subject-matter jurisdiction. *Council for Urological Interests v. Sebelius*, 668 F.3d 704, 707 (D.C. Cir. 2011). We presume that we have the power to review agency action unless there is clear and convincing evidence that Congress directed otherwise. *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2140 (2016); *see also, e.g.*, *Knapp Med. Ctr. v. Hargan*, 875 F.3d 1125, 1128 (D.C. Cir. 2017) (applying the presumption in favor of review when considering whether a statutory provision barred the panel from reviewing a hospital's challenge to a CMS decision); *Tex. Alliance for Home Care Servs. v. Sebelius*, 681 F.3d 402, 408 (D.C. Cir. 2012) (same). But this presumption, "like all presumptions used in interpreting statutes, may be overcome by specific [statutory] language." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984).

6

III

Paragraph (8) expressly shields from administrative and judicial review "prospective payment rates" and most of the statutory adjustments used to calculate them. HHS reads "prospective payment rates" to mean the step-two rates calculated by adjusting the step-one rates. Mercy Hospital reads "prospective payment rates" to mean the unadjusted rates set at step one.

We begin with the text of the preclusion paragraph:

There shall be no administrative or judicial review . . . of the establishment of—
(A) case mix groups, of the methodology for the classification of patients within such groups, and of the appropriate weighting factors thereof under paragraph (2),
(B) *the prospective payment rates under paragraph (3)*,
(C) outlier and special payments under paragraph (4), and
(D) area wage adjustments under paragraph (6).

§ 1395ww(j)(8) (emphasis added).

Subparagraph (8)(B) directs us to paragraph (3), which describes the "prospective payment rate":

The Secretary shall determine a prospective payment rate for each payment unit for which such rehabilitation facility is entitled to receive payment under this subchapter. Subject to subparagraph [(3)](B), such rate for payment units occurring during a fiscal year shall be based on the average payment per payment unit under this subchapter for inpatient operating and capital costs of rehabilitation

facilities using the most recent data available (as estimated by the Secretary as of the date of establishment of the system) adjusted [by the statutory adjustments].

§ 1395ww(j)(3)(A).

We think a careful read of the provision makes plain what "prospective payment rate" means. Paragraph (3) boils down to the following: "The Secretary shall determine a prospective payment rate . . . based on the average payment . . . [as] adjusted . . . ." The prospective payment rate is only based on, not equal to, the average payment; it is the average payment that is adjusted to *produce* the prospective payment rate. As the district court explained, "there is simply no doubt that Congress used the term 'prospective payment rate' here in paragraph (3) to mean the *ultimate* payment rate, *after* the adjustments are factored in." *Mercy Hosp.*, 206 F. Supp. 3d at 98. We conclude that the statute defines "prospective payment rate" as the step-two, not the step-one, rate.

If the bar on reviewing the prospective payment rate protects the rate determined at step two, that bar must also include the adjustments used to calculate that rate. We considered how far a bar on review extends in *Florida Health Sciences Center, Inc. v. HHS*, 830 F.3d 515 (D.C. Cir. 2016). In that case, a hospital challenged the data HHS used to calculate its reimbursement for treating low-income patients who could not pay their own medical bills. *Id.* at 518. Although the hospital agreed that the statute barred review of the agency's final estimate of the reimbursement owed, it asserted that the bar did not extend to the underlying data the agency used to reach that estimate. *Id.* at 519. We rejected the hospital's argument and found that the estimate was "inextricably intertwined" with the underlying data because a court could not find fault with the data without also finding

fault with the final estimate, which relied on the data. *Id.* We held that bars to review extend far enough to prevent indirect challenges to agency decisions that Congress expressly shielded from review. *Id.* ("[W]e [are] concerned with the close connection between the element being challenged and the decision that could not be challenged in court." (citing *Tex. Alliance*, 681 F.3d at 409-11)).

As both a textual and a practical matter, the LIP adjustment is inextricably intertwined with the step-two rate, and so the shield that protects the step-two rate from review protects the LIP adjustment as well. The language of the statute ties together the prospective payment rate and the statutory adjustments. Paragraph (8) incorporates the prospective payment rate by citing paragraph (3), which is also the paragraph that directs the agency to apply each statutory adjustment. *See* § 1395ww(j)(8)(B) ("the prospective payment rates under paragraph (3)"). By citing paragraph (3), the statute indicates that the step-two, final rate is integrated with the statutory adjustments.

And realistically, a court cannot review any of those adjustments without also reviewing the step-two rate. A flawed LIP formula would mean that a step-two rate incorporating that formula must be incorrect because that rate depends in part on the flawed formula. A hospital that asks for review of the LIP adjustment used to calculate its reimbursement would be asking the court to remand the step-two rate to be recalculated with a different LIP formula. But remanding the step-two rate would require the court to first find that incorporating a flawed LIP formula made the step-two rate improper. This is the same determination that, if a hospital directly challenged its step-two rate for relying on an improper LIP formula, would be clearly barred by paragraph (8). Designing a pleading so that it circumvents a statutory bar to review will not override

Congress's decision to deny jurisdiction. *See Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 405 (D.C. Cir. 2005). Because reviewing a formula used by the prospective payment rate would effectively review the rate itself, we cannot review the former if we cannot review the latter.

Although the plain text of the preclusion and payment rate provisions define "prospective payment rates" as step-two rates, Mercy Hospital argues that neighboring provisions not invoked by the preclusion paragraph suggest a different meaning. Mercy Hospital's strongest example describes the area wage adjustment: "The Secretary shall adjust the proportion . . . of rehabilitation facilities' costs which are attributable to wages and wage-related costs, of the prospective payment rates computed under paragraph (3) for area differences . . . ." § 1395ww(j)(6).[3] According to Mercy Hospital, this is an instruction to adjust the prospective payment rate by area wage differences. Because the area wage adjustment is one of the statutory adjustments listed in paragraph (3), Mercy Hospital thinks the prospective payment rate must be the step-one rate, which is subject to adjustments, instead of the step-two rate, which cannot be adjusted further.

---

[3] The first full sentence of § 1395ww(j)(6), without the omissions we made for clarity, is:

> The Secretary shall adjust the proportion (as estimated by the Secretary from time to time) of rehabilitation facilities' costs which are attributable to wages and wage-related costs, of the prospective payment rates computed under paragraph (3) for area differences in wage levels by a factor (established by the Secretary) reflecting the relative hospital wage level in the geographic area of the rehabilitation facility compared to the national average wage level for such facilities.

Although an instruction to adjust the prospective payment rate might suggest that the rate is the unadjusted, step-one rate, it is not the *prospective payment rate* that is adjusted for area wages. Instead, the "Secretary shall adjust the *proportion*." § 1395ww(j)(6) (emphasis added). Despite nonstandard punctuation obscuring on which side of that proportion the prospective payment rate belongs, the sentence structure makes clear that the area wage adjustment applies to only the proportion and not the variables related by that proportion. By contrast, Mercy Hospital's reading that the "Secretary shall adjust the . . . prospective payment rates" by that proportion switches the placement of "rates" and "proportion" and inverts the natural reading of the provision. *Id*. We are sure that the area wage does not affect the prospective payment rate, and so we remain confident in the meaning supplied by paragraph (3).

Mercy Hospital next urges us to apply the canon against surplusage, which "cautions against interpreting one provision in a way that renders another redundant." *Fla. Health*, 830 F.3d at 520. We presume that Congress did not "include words that have no effect," and so we generally "avoid a reading that renders some words altogether redundant." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 176-77 (2012). Although choosing the reading that reduces redundancies is a helpful rule when interpreting ambiguous text, it does not apply when the text's meaning is plain. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 536 (2004). We find redundancies that are subtle or pitted against otherwise plain meanings to be feeble interpretative clues.

Both weaknesses appear in the surplusage that Mercy Hospital proposes is fatal to our interpretation that prospective payment rates are step-two rates. Mercy Hospital contends that Congress carefully selected the adjustments shielded from review. Paragraph (8) expressly elects certain adjustments for

protection, so Mercy Hospital reasons that it would be redundant to also list the step-two rate that incorporates those adjustments. *See* § 1395ww(j)(3)(A). The surplusage canon, Mercy Hospital concludes, directs us to avoid that interpretation because it would in practical effect erase the clauses that shield the three statutory adjustments from review. *See* § 1395ww(j)(8)(A), (C)-(D).

We agree that reading "prospective payment rates" to mean step-two rates means accepting some redundancy, but we see no cause for alarm. A little overlap, either by accident or design, is to be expected in any complex statutory scheme with interdependent provisions. *See Adirondack Med. Ctr. v. Sebelius*, 740 F.3d 692, 699 (D.C. Cir. 2014). The overlap may very well exist to make "double sure" that the statutory adjustments remain above the fray of litigation. *Fla. Health*, 830 F.3d at 520 (quoting *Shook v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 132 F.3d 775, 782 (D.C. Cir. 1998)). After all, courts apply a high level of scrutiny when determining whether a statute precludes review of an agency's decision. *See supra* Part II. Judging from the many recent cases involving challenges to CMS decisions covered by similar bars to review, Congress had good reason to worry that challengers might test the strength of provisions that preclude review of Medicare-related decisions. *See, e.g.*, *Knapp Med. Ctr.*, 875 F.3d 1125; *Fla. Health*, 830 F.3d 515; *Tex. Alliance.*, 661 F.3d 402.

Mercy Hospital contends the preclusion paragraph's incomplete coverage of the statutory adjustments undermines the "double sure" theory. Three clauses in the preclusion

paragraph cite different statutory adjustments,[4] but two statutory adjustments are absent from the list: the increase factor and the residual clause. Under the step-two reading of "prospective payment rates," the LIP adjustment has only one layer of protection while the enumerated adjustments like area wage have two layers. The sloppy edges of the overlapping provisions suggest to Mercy Hospital that Congress did not intend them.

That paragraph (8) does not build a redundant bar to review for each statutory adjustment is inconsequential because we do not rely on the precision of a "double sure" design to dismiss Mercy Hospital's surplusage theory. Even if the preclusion paragraph expressly covered each statutory adjustment, still looming would be the inconsistent language between the preclusion paragraph and the adjustment list. *Compare* § 1395ww(j)(3)(A)(iv) ("by the [case mix] weighting factors established under paragraph (2)(B)"), *with* § 1395ww(j)(8)(A) ("case mix groups, of the methodology for the classification of patients within such groups, and of the appropriate weighting factors thereof under paragraph (2)"). Our point is not that the statute built twin barriers to review for each adjustment so that the second line of defense could step up where the first line fell. Instead, we recognize that Congress may use overlapping language to sweep up technicalities that more precise provisions may leave behind. Sloppy edges do not imperil the clear definition of "prospective payment rates" as step-two rates. *See Loving v. IRS*, 742 F.3d 1013, 1019 (D.C. Cir. 2014).

---

[4] For those keeping score, subparagraph (8)(A) precludes review of case mix groups, which are cited as an adjustment in clause (3)(A)(iv); subparagraph (8)(C) precludes review of outlier payments, which are cited as an adjustment in clause (3)(A)(ii); and subparagraph (8)(D) precludes review of area wage adjustments, which are cited as an adjustment in clause (3)(A)(iii).

Mercy Hospital also invokes the negative-implication canon to suggest that by expressly including some, but not all, adjustments in the preclusion paragraph, the statute implies that the missing adjustments are excluded from review protection. Sometimes called *expressio unius est exclusio alterius*, the canon suggests that "expressing one item of [an] associated group or series excludes another left unmentioned." *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 80 (2002) (alteration in original) (quoting *United States v. Vonn*, 535 U.S. 55, 65 (2002)). The Supreme Court recently explained, "If a sign at the entrance to a zoo says 'come see the elephant, lion, hippo, and giraffe,' and a temporary sign is added saying 'the giraffe is sick,' you would reasonably assume that the others are in good health." *NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 940 (2017). Finding the negative implication of a statute is a context-specific exercise. *Id.* It becomes an unnecessary one when, like with the surplusage canon, the statute's meaning is otherwise plain. *See Vonn*, 535 U.S. at 65.

There is no need for us to rely on what the statute did *not* say to infer the scope of its review protection because the scope is made clear through its plain language. The preclusion paragraph directs readers to the adjustment paragraph, which explains that prospective payment rates are the step-two rates. Moreover, the complexity of the statute and the reasons for making the scope of the preclusion paragraph comprehensive instead of spare give us confidence that Congress did not create the preclusion paragraph with the kind of precision that invites inferences from what is carefully left unsaid.

Mercy Hospital briefly offers several additional reasons to read "unadjusted" into "prospective payment rates," but none undermines the statute's plain language. First, Mercy Hospital notes that before it brought its reimbursement

challenge, CMS had previously assumed jurisdiction to review hospitals' challenges to LIP adjustments without offering any explanation for its view. *See* Prospective Payment System for Federal Fiscal Year 2014, 78 Fed. Reg. 47,860, 47,900-01 (Aug. 6, 2013). Mercy Hospital suggests that CMS's historical practice of reviewing the adjustments implies that the step-one reading of "prospective payment rates" must be reasonable because it is the reading that the agency itself had previously presumed. CMS denies ever reading the statute that way and chalks up its past practice to a misreading of its own regulations. 78 Fed. Reg. at 47,900. Even if CMS had at one point adopted a different reading of the statute, this certainly would not be the first time an agency found ambiguity where there was none. *See, e.g.*, *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976-77 (2016). We aren't persuaded that the agency's practice, which it has since disclaimed as error, reveals anything about the clarity of the text.

Second, Mercy Hospital argues that preventing hospitals from seeking recourse for arbitrary and capricious adjustments would be "fundamental[ly] unfair[]." Mercy Hosp. Br. 54. Even if true, we cannot overlook a statutory provision's plain meaning simply because we might disagree with the policy it creates. *See Burrage v. United States*, 134 S. Ct. 881, 892 (2014). We can only interpret statutes, not rewrite them. Because of our limited role, we have consistently upheld broad bars to review in similar Medicare provisions without considering whether Congress's clear choice to preclude review disadvantaged hospitals. *See, e.g.*, *Knapp Med. Ctr.*, 875 F.3d at 1130. Moreover, a hospital remains free to make an ultra vires claim that the agency's reimbursement decision was so unreasonable that CMS must have used and applied criteria and reasoning that Congress did not permit in the governing statute, *see Fla. Health*, 830 F.3d at 522, but Mercy Hospital made no such argument here.

Third, Mercy Hospital contends that the preclusion paragraph does not apply to individual determinations because it applies only to "the *establishment* of . . . the prospective payment rates." § 1395ww(j)(8)(B) (emphasis added). Mercy Hospital interprets "establishment" to mean the initial promulgation of generally applicable standards and not the individual determinations for hospitals. Even if we accepted that "establishment" limited the precluded subject matter, the distinction would not help the hospital here. Though Mercy Hospital purports to challenge the rate determination, what it really challenges is the agency's de facto establishment of a new LIP adjustment formula. The fact that the agency made this change informally does not make this any less of an established formula. As is often true in Medicare, the proof is in the details. When the agency calculated Mercy Hospital's LIP adjustment, it did not make a mistake. It applied the formula it wanted to apply, the formula it had selected. Absent an argument that the agency acted outside its statutory authority in setting that framework, the statute precludes review.

Finally, Mercy Hospital alleges that a *prospective* payment rate can include only components known *before* the fiscal year begins. But interpreting "prospective" to exclude any component that is determined *after* the fiscal year would be unfaithful to the statute. "Prospective" is a term of art that often appears in statutes and regulations to describe a system based on anticipating events that have yet to pass. Subsection (j) is an example of a "prospective payment system," § 1395ww(j)(3)(B), which is designed to reimburse hospitals using formulas that are set before all the costs are known, *see Methodist Hosp. of Sacramento v. Shalala*, 38 F.3d 1225, 1227 (D.C. Cir. 1994) (explaining that a prospective payment system is a regime that "relies on prospectively fixed rates for each

category of treatment rendered"). A rate within a prospective payment system could easily be called a "prospective payment rate" despite relying on some variables, like the number of low-income patients served, that could not be filled in until after the year ended. Even if "prospective" were not couched in the well-established context of prospective payment systems, Mercy Hospital would still be reading too much into a single word that Congress defined as part of the full phrase "prospective payment rate" in paragraph (3).

We conclude from the statute's plain language that "prospective payment rates" means step-two rates. Because the preclusion paragraph bars review of step-two rates and the statutory adjustments, we affirm the district court's dismissal of Mercy Hospital's challenge to the Medicare Contractor's LIP adjustments for fiscal years 2002 through 2004 for lack of subject-matter jurisdiction.

*So ordered.*