# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 16, 2023        Decided May 3, 2024

No. 22-5253

CONCERT INVESTOR, LLC,
APPELLANT

v.

SMALL BUSINESS ADMINISTRATION AND ISABELLA CASILLAS
GUZMAN, ADMINISTRATOR, SMALL BUSINESS
ADMINISTRATION,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-03150)

———

*James E. Tysse* argued the cause for appellant. With him
on the briefs were *Michael Weisbuch*, *Caroline L. Wolverton*,
*Lide E. Paterno*, and *Michael W. Fires.*

*Bradley G. Silverman*, Assistant U.S. Attorney, argued the
cause for appellees. With him on the brief were *Brian P.
Hudak* and *Jane M. Lyons*, Assistant U.S. Attorneys. *R. Craig
Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: PILLARD and CHILDS, *Circuit Judges*, and
EDWARDS, *Senior Circuit Judge*.

Opinion for the court filed by *Circuit Judge* CHILDS.

CHILDS, *Circuit Judge*. The Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act appropriated over $15 billion to the Small Business Administration (the "SBA") to disburse Shuttered Venue Operators Grants ("Grants") to small businesses impacted by the Covid-19 pandemic. Pub. L. No. 116-260, § 324, 134 Stat. 1182, 2022 (2020) (codified at 15 U.S.C. § 9009a); Pub. L. No. 117-2, § 5005(a), 135 Stat. 4, 91 (the "Act"). Alongside other economic-relief measures such as the Paycheck Protection Program, Congress designed these Grants to make emergency income support broadly available to entertainment businesses that suffered at least a 25% reduction in gross revenue in 2020. *See* 15 U.S.C. § 9009a(a)(1)(A)(i)(II). This case arises out of Appellant Concert Investor LLC's ("Concert Investor") unsuccessful application for a Grant.

**I.**

Concert Investor is a small business, based out of Nashville, Tennessee that helps mount concert tours on behalf of performing artists such as Twenty One Pilots, Little Big Town, and O.A.R. Due to the drop in demand for live concerts during the Covid-19 pandemic, Concert Investor's 2020 revenue fell 94% from 2019. Struggling to stay afloat, Concert Investor applied in April 2021 for a Grant of $4,988,317.35, or 44.6% of its 2019 revenue. *See* 15 U.S.C. § 9009a(c)(1)(A)(i)(I) (providing for up to 45% of gross earned revenue in grant funding).

In its application, Concert Investor asserted eligibility for a Grant as a "live performing arts organization operator,"[1] which the Act defines as an entity that "as a principal business activity, organizes, promotes, produces, manages, or hosts live concerts, comedy shows, theatrical productions, or other events by performing artists." 15 U.S.C. § 9009a(3)(A)(i)(I)(aa) (The Act also identifies other criteria not relevant here). Concert Investor claimed that it met this definition because it "produces" live music concerts.

To demonstrate its eligibility, Concert Investor submitted documentation showing the wide range of its responsibilities for the tours that it puts on, and in particular the Twenty One Pilots Bandito Tour ("the tour"), which ran from October 2018 to December 2019. That documentation showed that its participation in the planning and design of the tour began fourteen months before the tour opened. Concert Investor's contributions included creative set elements such as a plexiglass bridge spanning two stages and a burning Cadillac, as well as logistical elements such as schematic diagrams detailing the staging, engineering, lighting, video, and special effects. It was also responsible for hiring subcontractors to provide services such as stage managing and staging, graphic design, audio, lighting, screen media, video, rigging, and special effects.

To support its April 2021 application, Concert Investor attached: magazine articles describing its participation in the

---

[1] Concert Investor originally applied in April claiming eligibility as a theatrical producer, but the only application at issue here is the one that it resubmitted in August as a live performing arts organization operator, a category it thought better reflected that it produces music concerts rather than theatrical productions.

tour, an unsigned contract with Twenty One Pilots referring to Concert Investor as the "Producer" for the tour and requiring Concert Investor to provide "experienced touring technicians. . .for all necessary purposes. . .for the concert tour," a comprehensive budget and week-by-week timeline of costs for the tour, a master ledger for the tour showing costs actually incurred, invoices for travel costs including chartering an airplane to transport show equipment between continents, as well as bank records of payroll payments and workers compensation and employee liability insurance policies for tour staff.

On July 10, 2021, Concert Investor learned through the SBA's application portal that its Grant application had been denied. Concert Investor filed an administrative appeal in August 2021, and received a boilerplate denial later that month. Nine days after it denied Concert Investor's appeal, the SBA notified Concert Investor that it would re-evaluate its decision on the appeal. However, upon reconsideration the SBA again denied Concert Investor's appeal. In its denial following reconsideration, the SBA stated that Concert Investor "[d]id not meet the principal business activity standard for the entity type under which [it had] applied" and "[d]id not meet one or more of the eligibility criteria specific to the entity type under which [it had] applied." JA251. Following the SBA's decision, Concert Investor filed a lawsuit in the United States District Court for the District of Columbia seeking judicial review of the SBA's decision under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. (the "APA"). While the lawsuit was pending, the SBA notified Concert Investor that it was rescinding its denial, but just one month later, the SBA issued a final denial of Concert Investor's appeal.

The SBA continued to find Concert Investor ineligible for a Grant, explaining:

Concert Investor, at best, serves the needs of touring concert artists for lighting and sound, designing the plots and obtaining subcontractors to install and operate the necessary equipment during a concert. This is insufficient to meet the definition of a performing arts organization operator. Concert Investor does not create, perform, or present live performances – its clients/artists do. Concert Investor also does not organize or host live concerts.

The SBA then referred Concert Investor to the Frequently Asked Questions page of its website, which stated that "[Grants] are not available for service providers that support eligible entities." JA109. The SBA did not, however, identify which eligible entity it concluded Concert Investor supported. Additionally, responding to Concert Investor's argument that several of its competitors received Grants, the SBA stated that it would re-review the eligibility of those Grant recipients.

Following the SBA's final denial, both parties moved for summary judgment in the district court. In its summary judgment motion, Concert Investor reiterated its argument that the record evidence showed that it met the definition of a live performing arts operator based on its role in producing concerts. The SBA, meanwhile, argued that to "produce" concerts within the meaning of the statute required "ultimate control over and responsibility for all aspects of bringing a show to fruition—such as booking a venue; selecting artists to perform; hiring lighting/sound contractors; and arranging financing, marketing, ticketing, and security—not mere intermediate oversight of discrete facets of the show." ECF

No. 46 at 11.[2] Because Concert Investor did not "hav[e] responsibility for all aspects of the concerts," *id.* at 9, it did not "produce" concerts. The SBA also reiterated that it was "reconsidering the grants that it awarded to [certain of Concert Investor's competitors], and will rescind those grants if it determines that they were improper." *Id.* at 15. Concert Investor objected to the SBA's definition of a producer as someone with responsibility over "all aspects" of a concert. ECF No. 48 at 1-2. Concert Investor argued that the "all aspects" definition was a post hoc rationalization that the SBA had raised for the first time in the district court, in violation of *Chenery*. ECF No. 48 at 1-2 (citing *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80 (1943) (A court can only uphold agency action for reasons the agency articulated in the administrative record.)).

The district court denied Concert Investor's motion for summary judgment and granted the SBA's. *Concert Inv., LLC v. SBA*, 616 F. Supp. 3d 25 (D.D.C. 2022). It held that the SBA's definition of "producer" was not an impermissible post hoc rationalization, but rather "an amplified articulation of its definition of producer where the relevant portions of the definition were already present in the underlying opinion." *Id.* at 31 (internal quotation marks omitted). It then agreed with the SBA that substantial evidence in the record showed that Concert Investor was not a producer. *Id.* at 34-35. Finally, the district court rejected Concert Investor's argument that it was treated differently from similarly situated competitors. *Id.* at 35-37.

Concert Investor appeals the district court's order denying its summary judgment motion and granting the SBA's.

---

[2] All ECF citations refer to the district court's docket in *Concert Investor v. SBA*, 21-cv-03150 (D.D.C.).

Reviewing the district court's summary judgment order *de novo*, *see Ark Initiative v. Tidwell*, 816 F.3d 119, 126-127 (D.C. Cir. 2016), we vacate the district court's order granting summary judgment to the SBA and remand this case for further proceedings consistent with this opinion.

## II.

Before turning to the merits, we first address two threshold arguments raised by the parties.

## A.

Concert Investor argues that the SBA engaged in impermissible post hoc rationalization by defining an eligible "produce[r]" as an entity that exercises "ultimate control over and responsibility for all aspects of bringing a show to fruition" for the first time in the district court. ECF No. 48 at 12.

"The policy of the post hoc rationalization rule does not prohibit [an agency] from submitting an amplified articulation of the distinctions it sees." *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006) (internal citation and quotation marks omitted). Nor does it require that "[a]n agency's decision. . .be 'a model of analytic precision to survive a challenge.'" *United Airlines v. Transp. Sec. Admin.*, 20 F.4th 57, 62 (D.C. Cir. 2021) (quoting *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995)). Where an agency's prior explanation fails to fully explain its reasoning, the agency may "offer a fuller explanation of [its] reasoning at the time of the agency action." *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1907 (2020) (cleaned up).

We hold that the "all aspects" definition of producer that the SBA relies upon in its litigation briefing is a permissible amplification of the justification that the SBA articulated in the

agency record. In its final decision, the SBA concluded that "the limited services which Concert Investor provided for its client renders it ineligible for a [Grant]." JA63. The SBA explained that other entities were responsible for a range of tasks related to putting on concerts. For example, the musical duo Twenty One Pilots was "responsible for the transportation of the equipment and personnel retained by Concert Investor as well as the lodging of and per diem rates for the personnel." JA61. And "every venue that Concert Investor operated in. . .had a box office manager and security staff, was booked by a professional talent agency[,] and a majority of the venues were operated and promoted by [entertainment company] Live Nation." JA61. The SBA concluded that Concert Investor's role working with "lighting and sound, designing the plots and obtaining subcontractors to install and operate the necessary equipment during a concert" was too limited for it to qualify as a "producer." JA62. Although the SBA did not use the phrase "all aspects," its conclusion that Concert Investor is not a producer because it does not have all of the responsibilities described above made sufficiently clear it thought that a producer must have all of those responsibilities. We therefore conclude that the SBA's "all aspects" definition is a permissible amplification of the explanation that it provided in the administrative record.

**B.**

We also reject the SBA's argument that Concert Investor forfeited its challenge to the SBA's "all aspects definition" by not raising it below. Concert Investor promptly challenged the SBA's "all aspects" definition once the SBA fully articulated it to the district court. *See Shea v. Kerry*, 796 F.3d 42, 54 (D.C. Cir. 2015) (holding that a plaintiff may respond to newly raised arguments where its response falls within the "latitude" to "elaborate" its prior arguments). For instance, at the hearing

on the parties' cross motions for summary judgment, Concert Investor told the district court that "Concert Investor may not handle things like booking or marketing, ticketing or security, but. . .[t]he statute. . .recognizes that venues typically handle those types of things, including especially security, and then also a promoter can take care of it." JA801. Concert Investor went on to argue that although "the promoter Live Nation. . .managed the ticketing. . .[a]nd then the venues themselves handled. . .hosting the event," "Concert Investor brought the show into those venues through its design and contracting with all the service providers who put on the shows." JA792.

## III.

We now turn to the merits of the SBA's decision. To recapitulate briefly, an entity qualifies for a Grant as a "live performing arts organization operator" if one of its primary business activities is, as relevant here, "produc[ing]. . .live concerts." 15 U.S.C. § 9009a(a)(3)(A)(i)(I). According to the SBA, a concert "produce[r]" must have "ultimate control over and responsibility for *all aspects* of a show"—including tasks such as "booking a venue," "selecting artists to perform," and "arranging financing, marketing, ticketing, and security." ECF No. 46. In this case, because other entities were responsible for some of these tasks—a professional talent agency booked the venues, Live Nation operated and promoted the concerts, and Twenty One Pilots itself acquired certain equipment and personnel—the SBA decided that Concert Investor was not a "produce[r]." We find that decision was "not in accordance with law." 5 U.S.C. § 706.

## A.

The SBA's reading of the Act is inconsistent with the statutory language. A plain reading of the disjunctive list:

"organizes, promotes, produces, manages, *or* hosts live concerts. . .," *id.* § 9009a(a)(3)(A)(i)(I) (emphasis added), reveals that an entity need perform only one of these activities to be eligible. *See, e.g.*, *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 87 (2018) ("'[O]r' is almost always disjunctive.") (cleaned up). And a familiar canon of statutory interpretation counsels against reading the definition of "produces" to require organizing, promoting, managing, or hosting a concert. Courts avoid reading statutes in a manner that would render certain statutory terms "altogether redundant." *See Mercy Hosp., Inc. v. Azar*, 891 F.3d 1062, 1068 (D.C. Cir. 2018) (quoting ANTONIN SCALIA & BRYAN A. GARDNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 176-77 (2012)). If an entity also had to organize, promote, manage, or host a concert in order to produce it, then any entity that met the definition of "produces" would simultaneously meet another basis for eligibility—rendering "produces" superfluous. Thus, it is unlikely that the definition of "produces" encompasses all of these other aspects of bringing a concert to the public.

Our plain reading of the Act is consistent with how the industry defines a producer. Where Congress uses a term that has an "established meaning within a particular industry," the term should be construed with "reference to the actual context of the regulated industry in question." *Ass'n of Am. R.R. v. Costle*, 562 F.2d 1310, 1319-21 (D.C. Cir. 1977); *see* Concert Investor Br. at 25; SBA Br. at 26-27. Here, a source that both parties identify as authoritative defines live event producers by the significant financial, creative, and managerial role that they play throughout the life cycle of an event. *See, e.g.*, JA143, 171-73, 773-774 (citing *Concert/Event Producer*, Berklee Coll. of Music, https://perma.cc/C8U9-W3YL). But the industry definition of producer is not limited to those with control over all aspects of a concert—in many cases no one has total control. As the parties' proffered publication explains, a

producer may sometimes also be the concert's "promoter," "live experience designer, and "music director," while other times those roles may be performed by different parties. *See id.* An appropriate definition must therefore capture the significant financial, creative, and managerial role that live event producers play from start to finish.

**B.**

Because the SBA defined "produces" too narrowly, it also failed to consider relevant record evidence supporting Concert Investor's eligibility for a Grant. The SBA's conclusion that Concert Investor was a mere "service provider" for lighting and sound, did not account for several types of evidence submitted by Concert Investor.

Among it, the SBA apparently ignored 107 pages of creative elements submitted by Concert Investor, many of which were eventually featured in the tour. First, Concert Investor submitted extensive schematic diagrams showing its involvement in designing creative elements for Twenty One Pilots. That work extended beyond light and sound to include, for example, substantial set construction. Concert Investor's significant creative work for the tour began fourteen months before the first show. Second, the SBA also ignored evidence of Concert Investor's significant managerial role on the tour. That work involved superintending a wide range of production-related tasks for the duration of the tour, including coordinating transportation, managing the tour's budget, and hiring necessary tour personnel. This evidence included invoices for travel costs related to chartering an airplane to transport show equipment between continents, a comprehensive budget and week-by-week timeline of tour costs, a master ledger, workers compensation and employee liability insurance policies, and a contract with Twenty One Pilots making Concert Investor

responsible to provide "experienced touring technicians . . . for all necessary purposes . . . for the concert tour." JA611. Together, this evidence paints a picture that Concert Investor has substantial responsibility over many different aspects of the tour.

Finally, the SBA ignored Concert Investor's financial role on the tour, evidenced by the numerous invoices between Concert Investor and the subcontractors it hired, including a sound engineer, a stage manager, an audio package and equipment, power generation and distribution, video directors, content creators, and special effects. These invoices support Concert Investor's claim that it was responsible for hiring the subcontractors used for sound engineering, audio equipment, special effects, and touring infrastructure, and they undermine the SBA's conclusion that Concert Investor was itself a mere subcontractor or service provider for light and sound.

On remand, the SBA should reconsider Concert Investor's application in light of the complete administrative record.

## C.

Finally, in light of the above holding that SBA incorrectly applied the Act to Concert Investor, we need not reach Concert Investor's alternative claim that the SBA violated the APA by awarding Grants to six companies with business models similar to Concert Investor's while denying relief to Concert Investor.

*****

For the foregoing reasons, we vacate the district court's order granting summary judgment to the SBA and remand this case for further proceedings consistent with this opinion.

*So ordered.*