**Claude MILLSAP, Sr.,
Plaintiff-Appellant,**

v.

**Cecil ANDRUS, Secretary of the Department of the Interior, et al., Defendants-Appellees.**

No. 81–2049.

United States Court of Appeals, Tenth Circuit.

Sept. 23, 1983.

Richard D. Wagner and Stephen C. Wilkerson of Knight, Wagner, Stuart, Wilkerson & Lieber, Tulsa, Okl., for plaintiff-appellant.

Frank Keating, U.S. Atty., and Philard L. Rounds, Jr., Asst. U.S. Atty., N.D. Okl., for defendants-appellees.

Before SETH, Chief Judge, McKAY, Circuit Judge, and BRATTON, District Judge.*

McKAY, Circuit Judge.

The plaintiff appeals a district court ruling that the mining of dolomite falls within the reservation of "oil, coal, gas, or other minerals" contained in a warranty deed conveying to him rights in property formerly a part of the Osage Indian Reservation.

By Act of Congress approved on June 28, 1906, 34 Stat. 539, lands belonging to the Osage Indians, but held in trust by the United States, were divided among the Indians except that "oil, gas, coal, or other minerals covered by the lands" were reserved to the Osage tribe for twenty-five years. *Id.* § 3, at 543. "[L]eases for all oil, gas, and other minerals ... [were to] be made by the Osage tribe of Indians through its tribal council, and with the approval of the Secretary of the Interior." *Id.* The reservation of the mineral rights to the tribe has been periodically extended by Congress, and in 1955, the plaintiff received by warranty deed a portion of the Osage Indian property "subject to reservation of oil, gas, coal and other minerals to the Osage Tribe of Indians by Act of Congress June 28, 1906. [sic] (34 Stat.L. 539) and Acts amendatory thereof and supplementary thereto." Record, vol. 1, at 12. The Osage tribe, with the approval of the Secretary of the Interior, has granted various leases and permits to third parties to remove limestone from the land to which plaintiff owns the surface rights.[1] The

---

* Honorable Howard C. Bratton, Chief Judge, United States District Court for the District of New Mexico, sitting by designation.

1. The permit involved in this case is one issued to the Parks Concrete Company. In preparation for this action, it was discovered that the rock actually being mined was dolomite. Dolomite is similar to limestone in appearance and both are of the carbonate rock family. Also, both dolomite and limestone can be used for road base material. Brief of Appellant at 5. The limestone permit was therefore amended

plaintiff commenced this action seeking reparation of his property and an injunction to prevent the issuance of additional permits and to cancel the permits presently granted.

The deed reservation itself incorporates the reservation contained in the congressional legislation. Thus, it is clear that the deed reservation is intended to be coextensive with the congressional reservation so that the proper construction of the deed depends on what Congress intended to reserve to the tribe. Contemporary definitions of "minerals" are at best unclear. *See Watt v. Western Nuclear, Inc.,* —— U.S. ——, 103 S.Ct. 2218, 2223–24, 76 L.Ed.2d 400 (1983). We therefore look to the purposes of the Act for guidance in construing the meaning of "other minerals." *See id.,* 103 S.Ct. at 2225.

Congress apparently concluded that "the enjoyment of wealth without responsibility was demoralizing to the Osages" and embarked on a course of turning their property over to them gradually "in order to prepare [them] for complete independence." *McCurdy v. United States,* 246 U.S. 263, 265, 269, 38 S.Ct. 289, 291, 62 L.Ed. 706 (1918). To that end, the Osage Allotment Act provided for the equal division of trust funds and lands among the Indians. The trust fund was to be divided up by crediting each Indian with his proportionate share of the funds, with the government holding it in trust for his own benefit and that of his heirs. Interest on the trust together with royalties from mineral leases were to be paid quarterly to the individual Indians. After twenty-five years, the trust was to be dissolved, and the corpus distributed to the tribe members.[2] The lands were to be divided up with each tribe member getting three 160-acre parcels, one of which to be designated as a homestead. The homestead parcel was to be inalienable and nontaxable until otherwise provided by Act of Congress. The other parcels, known as surplus land, were to be nontaxable for three years and inalienable for twenty-five.[3] The oil, gas, coals, and other minerals on the allotted lands were reserved to the tribe and could be leased only by the Tribal Council with approval of the Secretary. Furthermore, the mineral rights were to become the property of the individual owner at the end of twenty-five years unless otherwise provided by Act of Congress.[4] In that fashion, Congress intended gradually to bring the Osages to complete autonomy by progressively increasing their property rights and responsibilities. The Act also evidences a congressional intent to maintain control over the more valuable resources to prevent their improvident depletion by individual tribe members.

◼ The overall scheme was to protect the Indian in transition by making the homestead parcel inalienable and permit management of the balance including alienation while insuring to tribal management the valuable economic base in the mineral resources which could be reserved without unduly inhibiting general alienation of surplus properties. Nothing in the scheme or the legislative history suggests any intent to limit the mineral reservation. In the face of the use of the generic phrase "other minerals" and the absence of any congressional intent to employ a specialized mean-

on November 19, 1980 to designate limestone/dolomite. Record, vol. 1, at 148. Since the appellant urges upon us no reason for treating them distinctly in our analysis, we will treat them as indistinguishable for purposes of construing "other minerals."

2. By Act of Congress approved April 18, 1912, the Secretary of the Interior was authorized to pay any Osage allottee all or part of his share of the trust funds if the Secretary was satisfied that the allottee was competent or that payment was in his "manifest best interest and welfare." *McCurdy v. United States,* 246 U.S.

263, 266–67, 38 S.Ct. 289, 290, 62 L.Ed. 706 (1918).

3. The surplus lands could be transferred at any time by the allottee if he received a certificate of competency from the Secretary of the Interior. 34 Stat. 539, 542 (1905–1907).

4. The twenty-five year period has been extended by Congress so that the Act's reservation of mineral rights to the Tribe was in effect at the time the property was conveyed to the plaintiff. *See* Brief of Appellant at 3.

ing, we must apply the general rule that statutes passed for the benefit of dependent Indian tribes are to be liberally construed with doubtful expression being resolved in favor of the Indians. *Alaska Pacific Fisheries v. United States,* 248 U.S. 78, 89, 39 S.Ct. 40, 42, 63 L.Ed. 138 (1918).[5]

■ If there were any doubt as to the congressional meaning of "other minerals," that rule mandates that it be read as incorporating the broad definition which the Secretaries of Interior have consistently given it. The Interior Department has treated the Act as reserving limestone mining rights. *See* Record, vol. 2, Exh. 14 at 3. In fact, the regulations promulgated as required by the Osage Allotment Act set the royalties to be paid for the extraction of numerous substances that are not similar to oil, gas, or coal and cover all types of minerals and ore. *See* 25 C.F.R. § 214.10 (1982). That clearly includes non-hydrocarbon minerals such as limestone and dolomite which are at issue here. They are inorganic substances that can be removed from the soil and used for commercial purposes, and there is no reason to suppose they were intended to be included in the surface estate.[6] *Cf. Watt v. Western Nuclear, Inc.,* —— U.S. ——, 103 S.Ct. 2218, 2228, 76 L.Ed.2d 400 (1983). We therefore affirm the trial court's holding that "other minerals" in the Osage Allotment Act includes limestone and dolomite rock.

■ The appellant argues that even if limestone is included in "other minerals," issuance of and operations under the permit should be enjoined because the defendants approved the permit without a damage agreement between the permittee and the plaintiff.[7] The requirement of a damage agreement is one which the tribe unilaterally imposed on itself in connection with mineral leases. The tribe waived its requirement, and the government approved the lease. *See* Record, vol. 2, Exh. 9. The regulations grant the land surface owner a right to damages from the licensee, *see* 25 C.F.R. § 214.14 (1982), and no claim is made that the procedures set out in the regulations for granting mining leases were not properly followed. Since the surface owner is adequately protected by the regulations, we see no reason for holding that the Tribal Council cannot waive the damage agreement requirement it has imposed on itself.

---

5. There is nothing in the legislative history or the language of the Act itself which would suggest that Congress intended to abrogate this generally applicable rule of construction in favor of the more restrictive Oklahoma state doctrine of *ejusdem generis* which the appellant urges upon us. That conclusion is further reinforced by *Watt v. Western Nuclear,* —— U.S. ——, 103 S.Ct. 2218, 76 L.Ed.2d 400, which indicated a broader view of the scope of reservations in federal grants.

   We find no significance in the specific enumeration of oil, gas, and coal. The appellant notes that these minerals were being mined in the surrounding areas at the time the Act was passed. Brief of Appellant at 8. That provides a special reason for specifically naming them in the Act but does not mean that Congress intended "other minerals" to include only minerals of a similar nature and quality. *Cf. Watt v. Western Nuclear, Inc.,* 103 S.Ct. at 2223 n. 5 (special reason for specifically listing coal in reservation clause under Stock-Raising Homestead Act sheds no light on meaning of "minerals").

6. The argument that the surface owner has virtually nothing left if rock of so common a variety as limestone or dolomite is a "mineral" is of little persuasive value even if true since it was rejected by the Supreme Court in *Western Nuclear,* —— U.S. ——, 103 S.Ct. 2218, 76 L.Ed.2d 400, where gravel was held to be a "mineral." *See id.* 103 S.Ct. at 2222, 2229.

7. The Osage Tribal Council passed Resolution No. 70 in 1921 providing that "the Principal Chief be authorized to execute stone mining leases after he has found that satisfactory settlement has been made between the proposed stone mining lessee and the allottee or surface owner of the land described in the proposed lease." Record, vol. 2, Exh. 10.