# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued December 9, 2010   Decided January 28, 2011

No. 10-5080

EL PASO NATURAL GAS COMPANY,
APPELLANT

v.

UNITED STATES OF AMERICA, ET AL.,
APPELLEES

Consolidated with 10-5090

Appeals from the United States District Court
for the District of Columbia
(No. 1:07-cv-00905)

*Jerry Stouck* argued the cause for appellant El Paso Natural Gas Company. *David A. Taylor*, pro hac vice, argued the cause for Navajo Nation. With them on the briefs were *Robert Charrow*, *Maggie Sklar*, *Thomas L. Sansonetti*, *Troy A. Eid*, *William G. Myers III*, *Christopher J. Neumann*, and *Paul E. Frye*.

*Michael T. Gray*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief was *Robert H. Oakley*, Attorney. *Eric G. Hostetler*, Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney, entered appearances.

Before: ROGERS and TATEL, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: This case concerns two sites on Navajo tribal lands that the Navajo Nation alleges were contaminated by World War II and Cold War era uranium mining. Pursuant to the Uranium Mill Tailings Remediation and Control Act (UMTRCA), which created a mechanism to cleanup after such activities, the Navajo Nation asked the Department of Energy to remediate both sites. The department refused, and the district court declined to review that decision, relying on a provision of UMTRCA stating that "designations made, and priorities established, by the Secretary under this section shall be final and not subject to judicial review." For the reasons set forth in this opinion, we affirm.

## I.

In the 1930s and 40s, "the uranium milling industry was under the dominant control of the Federal Government. At that time, uranium was being produced under Federal contracts for the Government's Manhattan Engineering District and Atomic Energy Commission program." H.R. Rep. No. 95-1480, pt. 1, at 11 (1978). The uranium mining process results in copious amounts of radioactive waste in the form of uranium mill tailings, a sandy waste produced during ore milling (from which only one to five pounds of usable

uranium is extracted from every two thousand pounds of mined ore). *Id.* (noting that nearly ninety million tons of such waste "are attributable to Federally-induced production"). Until "the early 1970's[,] there was little official recognition of the hazards presented by these tailings." *Id.* As a result, "mill tailings were left at sites, mostly in the Southwest, in an unstable and unprotected condition," creating a substantial threat to public health. *Id.*

In 1978, Congress passed UMTRCA, a comprehensive statute directing DOE, in cooperation with states and Native American tribes, to undertake remedial action of all sites contaminated by uranium "produced for sale to any Federal agency prior to January 1, 1971 under a contract with any Federal agency." 42 U.S.C. § 7911(6)(A). UMTRCA gave the Secretary of Energy one year from November 8, 1978, the statute's effective date, to "designate" uranium "processing sites" where remediation was required and to prioritize those sites. § 7912(a)(1), (a)(3)(b). Specifically, the statute required the Secretary to designate twenty-two listed sites, as well as any "other processing sites within the United States which he determine[d] require[d] remedial action to carry out the purposes of [UMTRCA]." § 7912(a)(1). UMTRCA defines "processing site" to include both the mill site itself and "any other real property or improvement thereon which—(i) is in the vicinity of such site, and (ii) is determined by the Secretary . . . to be contaminated with residual radioactive materials derived from such site." § 7911(6).

As to "vicinity" sites—the subject of this litigation— UMTRCA directs the Secretary to include such properties in the initial first year designation process but allows him to make additional inclusions after the one year deadline. In particular, section 7912(e) provides:

4

(1) The designation of processing sites within one year after November 8, 1978, under this section shall include, to the maximum extent practicable, [vicinity properties].

(2) Notwithstanding the one year limitation contained in this section, the Secretary may, after such one year period, include any [vicinity property] as part of a processing site designated under this section if he determines such inclusion to be appropriate to carry out the purposes of [UMTRCA].

§ 7912(e). Central to the issue before us, UMTRCA also contains a bar on judicial review. Section 7912(d) provides that "[t]he designations made, and priorities established, by the Secretary under this section shall be final and not subject to judicial review."

Two other statutory provisions are relevant to this case. First, UMTRCA directs the Secretary to enter into cooperative agreements with Native American tribes regarding cleanup of designated processing sites on tribal lands. § 7915. It contains a parallel provision requiring agreements with states for sites not on tribal lands. § 7913. Second, UMTRCA requires the Secretary to "encourage public participation and, where appropriate, [to] hold public hearings" in carrying out the Act. § 7921.

This case concerns one of the sites expressly listed in section 7912(a)(1)—the Tuba City, Arizona, uranium mill, which is located on Navajo Nation tribal lands. The Secretary designated this site in 1979, entered into a cooperative agreement with the Navajo Nation in 1985, and completed cleanup in 1990.

In the early 2000s, the Navajo Nation discovered that two nearby properties, the Tuba City Landfill and the Highway 160 Site, were also contaminated and alleged that the Tuba City Mill was the source of the contamination. In December 2003, the Navajo Nation sent a letter to the Secretary explaining that the sites needed remediation and requesting a meeting. In April of the following year, the Secretary replied that DOE believed the sites had been contaminated by a source other than the Tuba City Mill and so failed to qualify for UMTRCA remediation. The Secretary nonetheless agreed to set up a meeting.

The Navajo Nation shared the Secretary's letter with the El Paso Natural Gas Company, the successor in interest to the company that had run uranium mining operations at the Tuba City Mill. El Paso, concerned about its own possible liability for harms caused by unremediated sites, brought suit against DOE and several other federal agencies. Alleging, among other things, that DOE's denial of the Navajo Nation's request to include the two sites as vicinity properties was arbitrary and capricious, El Paso asked the district court to issue a judgment declaring that DOE had failed to adhere to its legal obligation and that the Department, not El Paso, is "legally liable for the remediation costs and damage to the environment resulting from residual radioactive material or other deleterious or hazardous substances that emanated . . . from the Mill." Amended Compl. ¶ 102. As part of this claim, El Paso also alleged that DOE violated UMTRCA's public participation requirement by failing to hold a public meeting before deciding that the Tuba City Landfill and the Highway 160 Site did not qualify for UMTRCA remediation. *Id.* ¶ 100.

The district court dismissed the request for declaratory relief for want of subject matter jurisdiction, concluding that El Paso's claim was covered by section 7912(d)'s bar on

judicial review. *El Paso Natural Gas Co. v. United States*, 605 F. Supp. 2d 224, 225 (D.D.C. 2009). Relying on the fact that the definition of vicinity property is part of the definition of processing site, the court reasoned that the decision to "include" a vicinity property pursuant to section 7912(e)(2) is "nothing more than to designate the scope—or boundaries—of the processing site." *Id.* at 228. In addition, the court pointed out that section 7912(d), the jurisdiction-stripping provision, contains no temporal limits and appears to apply to all designations made pursuant to section 7912. *Id.* The district court then responded to El Paso's argument that "even if DOE's purported decision to not include the Properties as part of the Mill processing site was in fact a designation, it was a not a designation 'made,' but a designation 'not made,' and therefore § 7912(d) is inapplicable." *Id.* at 229. The court rejected this argument on the ground that "designations made" include designations *not* made because "any decision to take an affirmative action necessarily is a decision to *not* take its inverse." *Id.*

Although the district court indicated that section 7912(d) might not foreclose judicial review of El Paso's public participation claim, the court nonetheless dismissed that claim for want of final agency action pursuant to the Administrative Procedure Act. 5 U.S.C. § 704 (authorizing review of "final agency action"). The court explained that DOE's April letter did not qualify as final agency action because it merely "informed the Navajo Nation of DOE's understanding of the relevant state of affairs" and agreed to set up a meeting. *Id.* at 229 n.8.

The district court granted the Navajo Nation's motion to intervene. El Paso now appeals, arguing that we have jurisdiction despite section 7912(d) and that the April letter constituted final agency action. Because, for the reasons

explained below, we agree that the district court lacked jurisdiction, we have no need to reach the question of final agency action with regard to El Paso's arbitrary and capricious claim. *Trudeau v. FTC*, 456 F.3d 178, 183–85 (D.C. Cir. 2006) (explaining that the APA's final agency action requirement is non-jurisdictional). Nor need we reach that question with regard to El Paso's public participation claim because, by asserting in its opening brief that this claim was inseverable from the arbitrary and capricious claim, the company forfeited any argument that the claim might fit within an exception to section 7912(d)'s bar on judicial review. Appellant's Br. 52 n.6. Our review is *de novo*. *Nat'l Air Traffic Controllers Ass'n v. Fed. Serv. Impasses Panel*, 606 F.3d 780, 786 (D.C. Cir. 2010) ("We review *de novo* the district court's grant of a motion to dismiss for lack of subject matter jurisdiction." (internal quotation marks omitted)).

## II.

When considering whether a statute bars judicial review, "[w]e begin with the strong presumption that Congress intends judicial review of administrative action." *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986). This presumption applies even where, as here, the statute expressly prohibits judicial review—in other words, the presumption dictates that such provisions must be read narrowly. *See Dart v. United States*, 848 F.2d 217, 221 (D.C. Cir. 1988). The question before us, then, is whether section 7912(d), read in light of the statute's structure and legislative history, overcomes the presumption and bars review of section 7912(e)(2) decisions to include additional vicinity property as part of a previously designated processing site. *Bowen*, 476 U.S. at 673 (directing courts to look at both the statutory language and the legislative history to determine congressional intent with respect to availability of judicial review); *Kucana v. Holder*, 130 S.Ct. 827, 835–39 (2010)

(directing courts to consider the statutory structure). This bar is relatively high. As the Supreme Court has explained, "where substantial doubt about the congressional intent exists, the general presumption favoring judicial review of administrative action is controlling." *Bowen*, 476 U.S. at 672 n.3 (internal quotation marks omitted). Thus, "[w]hen a statute is 'reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review.'" *Kucana*, 130 S.Ct. at 839 (quoting *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995)).

El Paso argues that section 7912(d) precludes review only of designations made during the first year pursuant either to section 7912(a), requiring the Secretary to designate and prioritize mill sites, or to section 7912(e)(1), requiring the Secretary to attempt to identify vicinity property within that first year. The statute, El Paso argues, creates two separate programs. The first includes activities relating to the two sections just described and was designed to be completed quickly, as evidenced by the one-year limitation and the bar on judicial review. The second includes actions taken pursuant to section 7912(e)(2), which calls for "inclusion" of additional vicinity properties. This second program has no such time limit and, according to El Paso, no bar on judicial review.

As evidence for this division, El Paso points to three features of UMTRCA's text. First, it notes the tense difference between sections 7912(e)(1) and (e)(2). According to subsection (e)(1), "*designation* of processing sites . . . shall include, to the maximum extent practicable, [vicinity properties.]" § 7912(e)(1) (emphasis added). Although this seems to indicate that inclusion is part and parcel of

designation, subsection (e)(2) directs the Secretary to "include [vicinity property] as part of a processing site *designated* under" section 7912, suggesting, El Paso insists, that designation has been completed and that inclusion amounts to a new activity. § 7912(e)(2) (emphasis added). In this regard, El Paso emphasizes the canon that when Congress uses different tenses in different statutory provisions, those differences should be given effect. Second, El Paso observes that the Secretary's authority to designate sites expired one year from UMTRCA's effective date. Therefore, the company argues, any action taken after that date may not be considered "designation." Finally, El Paso points out that section 7912(d) refers to "designations made" together with "priorities established." Since priorities were undoubtedly established only in the first year, the company urges us to read "designations made" as referring just to first-year activities.

El Paso's reading ignores critical features of the statute. To begin with, section 7911(6) defines "processing site" as both the mill site and the vicinity property. That a vicinity property is part of a processing site, that section 7912(e)(2) appears in section 7912, which is titled "processing site designations," and that section 7912(d) refers to the entire section rather than to particular subsections, all suggest that Congress intended to create a single program, the entirety of which is unreviewable. In addition, we disagree that the difference in tenses carries the significance that El Paso suggests. Read together, subsections (e)(1) and (e)(2) establish a relationship between inclusion and designation—the former being an element of the latter—and subsection (e)(2) establishes that although the Secretary was generally subject to a one year time limit, Congress carved out an exception for situations where designation of all qualified properties during that time frame would be impractical.

UMTRCA's legislative history reinforces this interpretation. A House Committee report used the word "designation" to refer to the inclusion of vicinity properties under section 7912(e)(2): "the committee does recognize that designation of all structures and buildings 'in the vicinity' of a processing site may not be practicable within this timeframe and allows some flexibility. The committee expects the DOE to act expeditiously on these *designations* as well." H.R. Rep. 95-1480, pt. 2, at 36 (emphasis added). To be sure, as El Paso points out, the same passage notes that "[t]he Bill does not authorize designation or the establishment of priorities after the one year deadline." *Id.* But El Paso takes the statement out of context. The sentence regarding vicinity properties immediately follows the sentence regarding the time limit, suggesting that Congress viewed subsection (e)(2) as an exception to the one-year rule rather than as a separate program.

On its face and in light of this legislative history, UMTRCA unambiguously created a single designation program that the Secretary was required to complete within one year except with regard to vicinity properties for which doing so would have been impractical. "Inclusion," as evidenced by its use in both sections 7912(e)(1) and (e)(2), is a subcategory of "designation," not a separate activity. UMTRCA is thus not "reasonably susceptible to divergent interpretation." *Kucana*, 130 S.Ct. at 839. The statute unambiguously provides that the decision to include a vicinity property as part of a designated processing site pursuant to subsection (e)(2) is a "designation[] made." Accordingly, we hold that section 7912(d) overcomes the presumption of reviewability and bars judicial review of actions taken pursuant to subsection (e)(2) just as it does of actions taken in the first year pursuant to subsection (e)(1) and section 7912(a).

In the alternative, El Paso argues that even if section 7912(d) precludes review of subsection (e)(2) decisions to include additional vicinity properties, the action in this case may nonetheless proceed because it involved a designation *not* made rather than a "designation made." But we agree with the district court that this distinction is of no consequence. "Designations made" must encompass all decisions regarding designation, as any other reading would eviscerate the bar on judicial review. Because El Paso has given us no reason why anyone would challenge a designation, which after all triggers substantial federal cost-sharing for remediation and imposes no liability on private parties beyond that which exists under other statutes, reading section 7912(d) to bar review only of affirmative designations would render the provision meaningless.

## III.

Finally, we address two concerns raised at oral argument by counsel for the Navajo Nation. First, he urged us to employ the canon of statutory interpretation directing courts to liberally construe statutes in favor of Native Americans. Recording of Oral Arg. at 15:48–16:10; *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985). This canon, however, has force only where a statute is ambiguous, *id.*; *Muscogee (Creek) Nation v. Hodel*, 851 F.2d 1439, 1444–45 (D.C. Cir. 1988), and as we have explained, section 7912(d), read in light of UMTRCA's other provisions, is unambiguous. In addition, even were section 7912(d) ambiguous, the presumption applies only to statutes "passed for the benefit of dependent Indian tribes." *Alaska Pac. Fisheries Co. v. United States*, 248 U.S. 78, 89 (1918) (interpreting the scope of land included in a reservation created by congressional act); *see also San Manuel Indian Bingo & Casino v. NLRB*, 475 F.3d 1306, 1312 (D.C. Cir. 2007) (noting that "[w]e have found no case in which the Supreme Court applied this principle of pro-

Indian construction when resolving the ambiguity in a statute of general application."). Here, UMTRCA's statement of purpose reveals that Congress passed the statute to protect public health in general rather than tribal health in particular. *See* § 7901(b) ("The purposes of this chapter are to . . . minimize or eliminate radiation health hazards to the public[.]").

Second, counsel pointed to the 1985 Cooperative Agreement, a contract between DOE and the Navajo Nation entered into pursuant to section 7915. Although the bulk of the agreement deals with the remediation process, one provision does direct DOE to "identify vicinity properties associated with the Tuba City site," pursuant to section 7912(e). According to counsel, this provision is independently enforceable and thus a separate basis for liability. But we are skeptical about this not only because the agreement establishes procedures for alternative dispute resolution that were not, as far as the record indicates, followed in this case, but also because allowing review of the decision pursuant to the statutory agreement would eviscerate section 7912(d)'s bar on judicial review of section 7912(e)(2) designations. In any event, we need not settle the issue because the amended complaint nowhere raises a claim based on the Cooperative Agreement. Rather, it alleges only direct violations of sections 7912 and 7921. To be sure, El Paso now argues that DOE's failure to comply with the agreement is "independently actionable under the APA as agency action unlawfully withheld or unreasonably delayed," Appellant's Br. 51–52, but parties may not raise a claim for the first time on appeal, *United States v. British Amer. Tobacco (Invs.) Ltd.*, 387 F.3d 884, 888 (D.C. Cir. 2004).

Because this action falls squarely within UMTRCA's bar on judicial review, we affirm the district court's dismissal of El Paso's sections 7912 and 7921 claims.

*So ordered.*