# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued March 15, 2018          Decided July 3, 2018

No. 17-5140

HO-CHUNK, INC., ET AL.,
APPELLANTS

v.

JEFF SESSIONS, IN HIS OFFICIAL CAPACITY, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-01652)

---

*B. Benjamin Fenner* argued the cause for appellants. With him on the briefs were *Patricia A. Marks* and *Joseph V. Messineo. Peter D. Lepsch* entered an appearance.

*William E. Havemann*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Jessie K. Liu*, U.S. Attorney, and *Mark B. Stern*, Attorney. *R. Craig Lawrence* and *Benton G. Peterson*, Assistant U.S. Attorneys, entered appearances.

Before: ROGERS and PILLARD, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*: Historically, the "Ho-Chunk" Tribe occupied portions of what are now several midwestern states. In the 1800's the Tribe entered into treaties with the United States and divided into two branches: the Ho-Chunk Nation of Wisconsin and the Winnebago Tribe of Nebraska. Both are federally-recognized Indian tribes with federal reservations. *See* 83 Fed. Reg. 4,235, 4,237, 4,239 (Jan. 30, 2018).

The four appellants in this case – a parent corporation and three of its subsidiaries – are incorporated under the laws of the Winnebago Tribe of Nebraska. Ho-Chunk, Inc., the parent corporation, is the Tribe's wholly-owned economic development arm. Among its wholly-owned subsidiaries are the three corporations who are also parties here. They are involved in the manufacture and distribution of cigarettes. Each corporation's principal place of business is the Tribe's reservation in Winnebago, Nebraska.

Appellant Rock River Manufacturing Company, one of these corporations, manufactures and imports tobacco products, including cigarettes. Rock River sells its products to another subsidiary corporation, HCI Distribution Company, as well as to state-licensed distributors. HCI Distribution resells these products to businesses owned or licensed by other Indian tribes. Woodlands Distribution Company, the third subsidiary corporation, sells tobacco products to off- and on-reservation companies.

In 2016, the federal Bureau of Alcohol, Tobacco, Firearms and Explosives sent letters to Rock River, HCI Distribution, and Woodlands. The letters notified the companies that the Bureau

intended to inspect and copy their records of tobacco transactions and asked them to name a mutually-acceptable inspection date within fifteen business days from receipt of the letters.

The companies and their parent responded with a complaint seeking a declaratory judgment that they are not subject to federal recordkeeping laws dealing with the distribution of cigarettes. The district court entered summary judgment against them. *Ho-Chunk, Inc. v. Sessions*, 253 F. Supp. 3d 303, 304 (D.D.C. 2017). Their appeal presents a question of statutory interpretation – do the federal recordkeeping laws cover these corporations?

ATF, as the Bureau is commonly known, issued its inspection notices pursuant to the Contraband Cigarette Trafficking Act of 1978, as amended. *See* 18 U.S.C. § 2343(c). The Act sought to remedy the "problem of organized crime and other large scale operations of interstate cigarette bootlegging and to help provide law enforcement assistance and relief to cities and States." S. Rep. 95-962, at 3 (1978).[1] To this end, "[a]ny person who ships, sells, or distributes any quantity of cigarettes in excess of 10,000 . . . in a single transaction . . . [must] keep such information as the Attorney General considers appropriate . . .." 18 U.S.C. § 2343(a). This may include

---

[1] The Act makes it a crime for "any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes or contraband smokeless tobacco." 18 U.S.C. § 2342(a). "[C]ontraband cigarettes" are "a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp, impression, or other indication . . . [of] payment of cigarette taxes . . .." 18 U.S.C. § 2341(2).

identifying information about cigarette purchasers and declarations of the purchasers' purposes in receiving the cigarettes. *Id.* § 2343(a)(1)–(3).

Rock River, HCI Distribution, and Woodlands claim that they are exempt from the Act's recordkeeping requirements. They are exempt, they say, because the statute and the regulations do not cover wholly-owned corporations of a federally-recognized Indian tribe.

Over the years, the Supreme Court has dealt with issues regarding Indian tribes and their sale of cigarettes. The law, as the Court has developed it, now stands as follows. Indians and Indian tribes may sell untaxed cigarettes on their reservations to tribal members for their personal consumption. *See Moe v. Confederated Salish & Kootenai Tribes of the Flathead Reservation*, 425 U.S. 463, 480–81 (1976). States, however, retain the authority to tax non-Indian customers of Indian cigarette distributors on the reservation. *See Washington v. Confederated Tribes of the Colville Indian Reservation*, 447 U.S. 134, 150–51 (1980). Under *Moe* and *Colville*, "a State may require Indian retailers to collect a tax imposed on non-Indian purchasers of cigarettes." *Dep't of Taxation & Fin. of N.Y. v. Milhelm Attea & Bros., Inc.*, 512 U.S. 61, 68 (1994). And a state may require tribal retailers selling cigarettes on the reservation to nonmembers of the tribe "to keep extensive records concerning these transactions." *Id.* at 71–72.

Although Indian tribes are thus subject to state recordkeeping requirements for cigarette sales, the corporations here claim they are exempt from the federal laws imposing similar requirements. One of their arguments rests on the following reasoning. The federal statute and regulations define "State" as a "State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or the Virgin

Islands." 18 U.S.C. § 2341(4); 27 C.F.R. § 646.143. These corporations are headquartered on the Tribe's reservation. An Indian reservation is within "Indian country." *See* 18 U.S.C. § 1151. The Act's definition of "State" does not mention "Indian country." Therefore the Act's recordkeeping requirements do not apply to these corporations.

The argument suffers from several flaws. The most obvious is that the Act's recordkeeping requirements do not turn on any territorial determination. *See* 18 U.S.C. § 2343(a). That these three corporations have their principal place of business on the Tribe's reservation in Nebraska says nothing about whether federal law requires them to keep records. More than that, if the corporations were correct that the Act's regulation of contraband cigarettes does not apply to sales to non-Indians in Indian country, this would not only be senseless but would also contravene decades of settled law upholding enforcement of the Act against individuals and entities operating on reservations. *See, e.g.*, *United States v. Morrison*, 686 F.3d 94, 96 (2d Cir. 2012); *Grey Poplars Inc. v. One Million Three Hundred Seventy-One Thousand One Hundred (1,371,100) Assorted Brands of Cigarettes*, 282 F.3d 1175, 1177 (9th Cir. 2002); *United States v. Baker*, 63 F.3d 1478, 1485–86 (9th Cir. 1995).

Neither the Act nor the implementing regulations contain any language exempting tribal entities operating on Indian reservations from the federal recordkeeping requirements. "Ordinarily, . . . an Indian reservation is considered part of the territory of the State." *Nevada v. Hicks*, 533 U.S. 353, 361–62 (2001) (citations and internal quotation marks omitted). The corporate appellants conceded as much at oral argument. The district court gave additional reasons for rejecting the corporations' "Indian country" argument. *Ho-Chunk, Inc.*, 253 F. Supp. 3d at 307–09. We agree with the district court and deem it unnecessary to repeat the court's reasoning.

The corporations' main argument is that § 2343(a) – the recordkeeping provision – applies only to "[a]ny person" and they are not "persons." They are not "persons," they argue, because they are "tribal instrumentalities," which assumes that a tribal instrumentality – and for that matter, a tribe itself – cannot be a "person." Both assumptions are mistaken.

The cigarette act does not define "person." Therefore, an interpreter of this legislation must consult the Dictionary Act, 1 U.S.C. § 1, as the Conference Committee on the cigarette act acknowledged, H.R. Rep. No. 95-1778, at 10 (1978) (Conf. Rep.). The Dictionary Act states: "In determining the meaning of any Act of Congress, unless the context indicates otherwise . . . the words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals."

This would seem to doom the corporations' we-are-not-a-person argument, regardless whether the Tribe itself is a "person." As to Ho-Chunk, Inc. and its subsidiaries, the obvious progression is this: the Act's § 2343(a) recordkeeping requirements apply to "[a]ny person"; under federal law, "person" includes "corporations"; these appellants are "corporations"; they are therefore "persons" and the Act's recordkeeping requirements apply to them.

The government, relying on *San Manuel Indian Bingo & Casino v. NLRB*, 475 F.3d 1306 (D.C. Cir. 2007), makes an argument much the same as the one we have just described from the Dictionary Act. The Indian tribe in *San Manuel* operated an on-reservation casino. The question was whether the tribe itself was a "person" and thus an "employer" within the meaning of the National Labor Relations Act. Section 2(2) of the NLRA defines "employer" to include "any person," with exceptions for the federal government and "any State or political subdivision

thereof." 29 U.S.C. § 152(2). The NLRA defines the term "person" in much the same terms as the Dictionary Act. *Id.* § 152(1). Our court, agreeing with the National Labor Relations Board, held that the tribe was an "employer" and thus subject to the NLRA. In so holding, the court necessarily decided that the tribe was a "person."[2]

If, as in *San Manuel*, an Indian tribe operating an on-reservation commercial enterprise may itself be considered a "person" subject to federal law, so too may the commercial corporations established under the laws of the Winnebago Tribe. It is no answer to say, as the corporations do, that they are tribal instrumentalities and that the term "person" usually excludes federal, state, and local governments and their agencies. *See Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 780 (2000). The statute in *San Manuel*, 29 U.S.C. § 152(2), explicitly contained such an exclusion, yet our court held that an Indian tribe running a casino was a "person" and thus an "employer." *See also supra* note 2.

There is another reason why the district court correctly held that Congress did not exempt the corporate appellants from the Act's recordkeeping provision: statutory context. *See Vt. Agency*, 529 U.S. at 781; *United States v. Persichilli*, 608 F.3d

---

[2] *See also CFPB v. Great Plains Lending, LLC*, 846 F.3d 1049, 1058 (9th Cir. 2017) (Indian tribes and their for-profit lending companies are "person[s]" who may be investigated by the Consumer Financial Protection Bureau under the Consumer Financial Protection Act); *Chickasaw Nation v. United States*, 208 F.3d 871, 878–80 (10th Cir. 2000), *aff'd*, 534 U.S. 84 (2001) (Indian tribe is a "person" subject to federal wagering excise taxes); *Fla. Paraplegic, Ass'n v. Miccosukee Tribe of Indians of Fla.*, 166 F.3d 1126, 1134–35 (11th Cir. 1999) (Indian tribe is a "person" subject to federal, but not private, enforcement under the Americans with Disabilities Act).

34, 37 (1st Cir. 2010); *see also* 1 U.S.C. § 1 (statutory terms depart from Dictionary Act defaults if "the context indicates otherwise"). Subsection (a) of § 2343 specifies the recordkeeping requirements applicable to "[a]ny person." The next subsection – § 2343(b) – requires periodic reports to the Attorney General of large cigarette transactions.[3] Subsection (b) applies to "[a]ny person, except for a tribal government" who distributes cigarettes. Assume the corporate appellants in this case are "a tribal government" even though they seem to be exclusively involved in commercial transactions. That would exempt them from subsection (b)'s reporting requirements. But the issue in this case deals with subsection (a)'s recordkeeping requirements. Subsection (a) contains no exception for "a tribal government," let alone for a corporation formed under tribal law and engaged in the cigarette business. As the district court recognized, the exception in (b) for tribal governments would have been unnecessary if "persons" in § 2343 did not include tribes. *Ho-Chunk, Inc.*, 253 F. Supp. 3d at 311. The district court added: "To the extent the goal was to cut down on cigarette taxation avoidance, it would have made little sense to wholly exempt tribal agencies and instrumentalities from the Act—thus offering cigarette bootlegging organizations a clearly demarcated shelter from enforcement." *Id.*[4]

---

[3] Congress added § 2343(b) in 2006. *See* Pub. L. No. 109-177, § 121(c), 120 Stat. 192, 222–23.

[4] The Ho-Chunk corporations invoke the canon that statutes should be liberally construed in favor of Indians. *See Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985). But this canon applies only to statutes that are both ambiguous and passed for the benefit of Indian tribes. *See El Paso Nat. Gas Co. v. United States*, 632 F.3d 1272, 1278 (D.C. Cir. 2011); *San Manuel*, 475 F.3d at 1311–15. The recordkeeping provision of the Act is not ambiguous and neither that provision, nor the Act itself, was passed for the benefit of Indian tribes.

The corporations also claim that the position of the Bureau of Alcohol, Tobacco, Firearms and Explosives regarding § 2343(a), as set forth in its 2016 inspection letters, is an unexplained and arbitrary departure from agency policy in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), and that the Bureau violated the APA when it adopted its position without engaging in notice and comment rulemaking. The premise is that the inspection letters represented a change in the Bureau's position regarding whether the Act applies to the Ho-Chunk corporations.[5] The corporations did not present their APA arguments to the district court before it entered summary judgment and we therefore will not consider them. *See, e.g.*, *Potter v. District of Columbia*, 558 F.3d 542, 547–51 (D.C. Cir. 2009).

We have reviewed and rejected the appellants' other contentions.

*Affirmed.*

---

[5] The government disputes this and points out that in 2013 the Department of Justice brought an enforcement action against HCI Distribution Company – one of the subsidiary corporations in this case – and senior employees of the company for violations of the Act, obtaining a $300,000 penalty from the company in lieu of prosecution and extracting plea agreements from the employees. *See* Press Release, Department of Justice, *Independence Business Owner, Wichita Attorney among 18 Indicted in $18 Million Conspiracy to Traffic in Contraband Cigarettes* (Aug. 14, 2013), https://www.justice.gov/usao-wdmo/pr/independence-business-own er-wichita-attorney-among-18-indicted-18-million-conspiracy; *United States v. Frenchman*, No. 13-291 (W.D. Mo. Feb. 13, 2015), ECF No. 336 (plea agreement of HCI Distribution's warehouse manager); *United States v. Guerrero*, No. 13-419 (W.D. Mo. Dec. 11, 2013), ECF No. 5 (plea agreement of officer in charge of operating HCI Distribution).